**SO ORDERED.**

**SIGNED this 31 day of May, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

WESLEY DAVID MURRAY and                CASE NUMBER: 10-10125-8-JRL
VIOLET ELISE MURRAY,                   CHAPTER 13

      DEBTORS.

_____

ORDER

This matter came before the court on the debtors' motion to value collateral and avoid lien. A hearing was held on April 21, 2011, in Wilmington, North Carolina.

BACKGROUND

The debtors own real property in Wilmington, North Carolina, subject to a deed of trust in favor of National City Mortgage. National City Mortgage assigned the deed of trust to The PNC Mortgage Services Group ("PNC"). Under the loan documents, the property is secured by the residence and by an escrow account maintained for the payment of property taxes and insurance. The balance on the mortgage at the time of the petition was approximately $227,884.21.

The debtors scheduled the value of the property as $175,110.95. This amount appeared

on the debtors' Schedule D as PNC's secured claim. The remaining $52,773.26 was scheduled as unsecured. After an appraisal of the property in January 2011, the debtors agree that the appraised value of the property, $179,500.00, is accurate. The debtors further assert that based on the appraisal, PNC's unsecured claim is $48,384.21. On February 9, 2011, the debtors filed a motion for valuation of collateral and motion to avoid lien. The motion proposes treatment on the secured portion of PNC's claim as monthly payments of $1,813.60 for 131 months. Interest on the secured portion is proposed at a rate of 5.5% per annum. An additional $652.00 shall be included in the final payment. Upon satisfaction of PNC's secured claim, the debtors request that the remaining unsecured portion be avoided. On February 10, 2011, the debtors filed an amended chapter 13 plan which failed to reflect the appraised value or PNC's secured claim. The court treats the motion to value collateral as an amendment to the proposed plan.

## DISCUSSION

Read together, sections 506(a) and 1322(b)(2) allow for bifurcation of a secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the securing collateral. In re Bradsher, 427 B.R. 386, 388 (Bankr. M.D.N.C. 2010). An exception to this general rule is where the claim is secured only by real property that is classified as the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Because the terms of the deed of trust securing PNC's claim mandate that an escrow fund be maintained as additional security, the primary issue before the court is whether the escrow account constitutes real property such that it would fall under the anti-modification exception of § 1322(b)(2).

The Fourth Circuit addressed the definition of "debtor's principal residence" and its impact on § 1322(b)(2) in In re Ennis, 558 F.3d 343 (4th Cir.2009). The court noted that the

anti-modification provision has two distinct requirements: 1) real property; and, 2) real property which is the debtor's residence. Id. at 346. It was further determined that the definition of principal residence in § 101(13A) only addressed the second prong. Therefore, the court must independently determine if the security at issue is also real property. Only when both requirements are answered in the affirmative is the anti-modification exception applicable. The term real property is defined by state law. Id.

Following Ennis, the Middle District of North Carolina addressed whether an escrow account is real property under a reading of North Carolina law. In In re Bradsher, the terms of the deed of trust included monthly payments of escrow which served as additional security. The court reasoned that:

> [t]he escrow provisions do not characterize or describe the rights arising from such provisions as being a component of the land described in the deed of trust or as constituting a right or privilege belonging or appertaining to such land. Nothing in the escrow provisions purports to engraft the escrow account onto the land so as to convert the escrow account into a tenement or hereditament that would be transferred to a grantee of the land. Nor was there any evidence of any custom or usage under which the escrow account would pass with a conveyance of the land.

Bradsher, 427 B.R. at 391. Where the escrow account was not real property as defined by state law, the creditor was outside the protection of the anti-modification clause of § 1322(b)(2). Id. at 392. Here, as in Bradsher, the deed of trust associated with PNC's claim contains a provision for the collection of monthly escrow funds which are "pledged as additional security for all sums secured by this Security Instrument." Therefore, the inclusion of the account as security renders the anti-modification exception of § 1322(b)(2) inapplicable.

Because the collateral is secured by more than real property that is also the debtors' primary residence, the debtors have allowably bifurcated PNC's claim. Relying on the January

3

2011 appraisal, the debtors assert that the value of the property securing the claim is not greater than $179,500.00.  The treatment for this claim proposed by the debtors, $1,813.60 for 131 months with interest at a per annum rate of 5.5%, and an additional $652.00 included in the final payment, is reasonable in that it will pay the full value of the secured claim over time.  Critical to the allowance of this treatment and determination of valuation is the fact that PNC, after proper service, failed to respond or appear at the hearing.  In the absence of an objection, PNC is deemed to consent to the proposed treatment of its claim as valued and paid by the debtors.

Based on the foregoing, the debtors' motion for valuation of collateral is ALLOWED.  For purposes of the debtors' chapter 13 plan, PNC shall be allowed a secured claim in the amount of $179,500.00 to be paid directly, and an unsecured claim of $48,384.21.

END OF DOCUMENT